**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

HECTOR GARCIA JR., as Personal Representative to the Estate of HECTOR GARCIA,

Plaintiff,

v.

CHS TX INC., as Successor in interest to CORIZON HEALTH, INC., VERONICA SALAZAR, CHRISTI BENNETT, MELISSA GARCIA, GLADYS HERNANDEZ, HEATHER BARELA, EDUARDO BERUMEN, YITZCHAK LEFKOWITZ, and PERIGROVE 1018 LLC,

Defendants.

Case No. 2:21-cv-00485-WJ/GJF
Hon. William P. Johnson
Mag. Gregory J. Fouratt

**DEFENDANTS YITZCHAK LEFKOWITZ AND PERIGROVE 1018, LLC'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), (2) AND (6)**

Defendants Yitzchak Lefkowitz ("Lefkowitz") and Perigrove 1018 LLC ("Perigrove") (collectively, the "Moving Defendants") move to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6). This Court lacks subject matter and personal jurisdiction over the Moving Defendants, and Plaintiff's Third Amended Complaint fails to state a claim upon which relief may be granted.

Accordingly, the Moving Defendants respectfully request that this Court enter an order (1) dismissing Plaintiff's Third Amended Complaint against them, with prejudice, and (2) granting such other relief as this Court deems just and proper.

## INTRODUCTION

Plaintiff's Third Amended Complaint added the Moving Defendants on the theory that they are "alter egos" of Defendant Corizon Health, Inc. ("Corizon") and that this Court should pierce the corporate veil and hold the Moving Defendants liable for Corizon's (a bankrupt entity's)

obligations, which in this case would be a yet-to-be issued (if ever) judgment. As often occurs when a plaintiff embarks on a search for deep, collectible pockets, Plaintiff here has thrown everything at the proverbial wall. None of it sticks, however, for multiple reasons.

*First*, this Court lacks general or specific jurisdiction over any of the Moving Defendants. Lefkowitz is a resident of and domiciled in New York, and has no ties to New Mexico other than allegedly appearing in New Mexico an unspecified number of times as a corporate officer (which Lefkowitz denies ever doing), thus prohibiting an exercise of general jurisdiction by this Court. Similarly, Perigrove is a New York limited liability company that is not registered to conduct business in New Mexico, does not have an agent designated for service in New Mexico, has no employees in New Mexico, and does not have a bank account in New Mexico, likewise prohibiting an exercise of general jurisdiction by this Court.

There is no specific jurisdiction in this Court, either. Lefkowitz and Perigrove lack sufficient minimum contacts with New Mexico. The Third Amended Complaint makes clear that the only alleged minimum contact between Lefkowitz and New Mexico is that he allegedly oversaw the business activities of several entities and has appeared for unspecified settlement proceedings in unspecified matters as a corporate representative. As Lefkowitz's declaration makes clear, he has never been to New Mexico for any reason. But, even this were true, it would still be insufficient to confer specific jurisdiction as a matter of law.

Perigrove's connection is even more tenuous. Perigrove has no contacts with New Mexico and has not availed itself of the privilege of conducting business there beyond simply owning an interest in a company that does business in New Mexico. The mere relationship of a parent company and subsidiary is not sufficient to establish jurisdiction under well-established law.

*Second*, the Court lacks subject-matter jurisdiction over this action because the sole count against the Moving Defendants—Count V (seeking to pierce the corporate veil)—is a cause of action that is exclusively vested in and is owned by bankruptcy trusts, not Plaintiff. Both applicable law and an operative order of the United States Bankruptcy Court for the Southern District of Texas provide that the Trusts alone may prosecute Plaintiff's claim. Plaintiff, accordingly, lacks standing to bring this action, which should be dismissed pursuant to Rule 12(b)(2).

*Third*, Plaintiff's Third Amended Complaint fails to state a claim because veil piercing (or "alter ego") is not an independent cause of action under New Mexico law. Even if it were, Plaintiff has failed to plead even the most basic elements necessary to state a claim under *Iqbal* and *Twombley*. Plaintiff's Third Amended Complaint fails to plead any facts establishing that Corizon was a "mere instrumentality" of the Moving Defendants, such as lack of corporate formalities, comingling of assets, undercapitalization, and the like. Rather, Plaintiff assumes that because Corizon is bankrupt, it can be pierced. That is not the law.

For all of these reasons, the Court should dismiss the Third Amended Complaint as to the Moving Defendants in its entirety and with prejudice.

## RELEVANT FACTUAL BACKGROUND

### A. The Underlying Facts and Claims.

Plaintiff, the Personal Representative to the Estate of Hector Garcia, alleges that Garcia was an inmate in the Doña Ana County Detention Center ("DACDC") in August 2019. (ECF No. 246, ¶¶ 4-5.) Corizon allegedly provided medical services to him at that time. (*Id.* at ¶ 6.) According to Plaintiff, Garcia received inadequate medical care during his incarceration, and as a result, he passed away. (*See generally* ECF No. 246.)

### B. Perigrove 1018, Who Had No Involvement with Garcia's Death or New Mexico, Purchased Corizon in 2021.

In late 2021, Lefkowitz, a resident of New York, was part of a group of investors, who, through Perigrove, purchased the parent company of Corizon who was, at that time, on the brink of bankruptcy. Ex. 1, Decl. Perigrove is a New York limited liability company with its principal place of business in New York. (ECF No. 246, ¶ 35.)

As Plaintiff alleges, since the transaction, Lefkowitz's connections to New Mexico are that he traveled to New Mexico as a corporate representative for settlement proceedings and that he allegedly oversaw Corizon's business activities after 2021, as a director located outside the state. (ECF No. 246, ¶¶ 31, 33.) Perigrove is not registered to conduct business in New Mexico, does not have an agent designated in New Mexico, and otherwise has no presence in New Mexico such as real property, bank accounts, or a place of business. Ex. 1, Decl. Neither Lefkowitz nor Perigrove have any ties to New Mexico, including at the time of the underlying factual allegations. Indeed, Lefkowitz has never been to New Mexico in any capacity, and has never travelled to New Mexico to appear in settlement proceedings related to his alleged business activities in New Mexico contrary to the allegations in the Third Amended Complaint. Ex. 1, Decl.

### C. The 2022 Corporate Restructuring of Corizon and Related Companies.

Corizon Health and several affiliates, including Corizon, LLC, formerly a Missouri limited liability company; Valitás Health Services, Inc. ("Valitas"), formerly a Delaware corporation; and Corizon Health of New Jersey, LLC, formerly a New Jersey limited liability company ("Corizon NJ," and together with Corizon Health, Corizon, LLC and Valitas, the "Company") experienced financial difficulties that reached a critical stage in 2021. Facing insolvency and the seemingly unavoidable prospect of bankruptcy and liquidation, the Company explored various restructuring alternatives. Eventually the Company's boards of directors determined that the 2022 Corporate Restructuring (as defined below) represented the best path forward for all stakeholders. Ex. 2, Agreement and Plan of Combination Merger.

The 2022 Corporate Restructuring was effectuated under the Texas Business Organizations Code ("TBOC") through the following steps:

- On April 28, 2022, Corizon Health (previously incorporated in Delaware) converted to a Texas corporation. Ex. 3, Certificate of Conversion.

- On May 1, 2022, the board of directors, shareholders, and members of the Company approved the 2022 Corporate Restructuring. Ex. 2, at Recitals.

- Each of Corizon Health, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger"). Ex. 2, at its Ex. A (Certificate of Merger).

- Corizon Health filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022, and the Combination Merger became effective on May 5, 2022. Ex. 2, at its Ex. A ; Ex. 4, Form 805, May 5, 2022.

- Corizon Health was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities. The other entities ceased to exist. Ex. 2 and its Ex. A.

With all Company assets and liabilities consolidated in Corizon Health, Corizon Health then completed a divisional merger (the "Divisional Merger"). As expressly permitted under the TBOC, Corizon Health's assets and liabilities were allocated between Corizon Health and CHS TX, a Texas corporation formed through the Divisional Merger. Ex. 5, Agreement and Plan of Divisional Merger and its Ex. A (Certificate of Merger) and Ex. B (Certificate of Formation). The Divisional Merger proceeded as follows:

- Corizon Health drafted the Plan of Merger, which provided that CHS TX would be formed and documented which assets and liabilities were to remain with Corizon Health and which were to be allocated to CHS TX. Ex. 5, §§ 3-4.

- The board of directors and sole shareholder of Corizon Health reviewed the Plan of Merger with the assistance of their respective outside advisors, determined that the Divisional Merger was in the best interests of Corizon Health, its shareholders and its creditors, and approved the Divisional Merger on May 1, 2022. Ex. 5.

- The approved Plan of Merger was in writing and included all information required by the TBOC. Ex. 5, §§ 1, 3-8.

- Corizon Health filed the Certificate of Merger and Certificate of Formation for CHS TX with the Texas Secretary of State on May 3, 2022, and the Divisional Merger became effective on May 5, 2022. Ex. 5 and its Ex. A; Ex. 6, Form 805.

After the Divisional Merger, CHS TX was acquired by YesCare as the final step, along with the Combination Merger and Divisional Merger, in Corizon Health's corporate restructuring (the "2022 Corporate Restructuring"). Corizon Health then changed its name to Tehum Care Services, Inc. Ex. 7, Certificate of Amendment of Corizon Health, Inc. dated June 1, 2022. The 2022 Corporate Restructuring allocated to Corizon Health—and left Corizon Health vested with—all inactive or expired customer contracts and all liabilities related to those contracts. Ex. 5, Agreement and Plan of Divisional Merger, Schedule 3.01(b); Schedule 4.01(b).

Corizon Health was also allocated and remained vested with, among other assets, (i) $1 million in cash, (ii) the right, subject to certain conditions being met, to $4 million under a $15 million total funding commitment (the "Funding Agreement") provided by M2 LoanCo, LLC, an affiliate of Corizon Health, and (iii) the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger. Ex. 5, Schedule 3.01(b).

Critically, Corizon Health was also released from nearly $100 million of senior secured credit debt that, absent the 2022 Corporate Restructuring, would have encumbered all of the Company's assets and left no value for unsecured creditors. Ex. 5, Schedule 4.01(a)(1). That release allowed Corizon Health's unsecured creditors the ability to assert claims against Corizon Health's assets, without standing behind nearly $100 million of secured debt, which was allocated to CHS TX. Ex. 5, Schedule 4.01(a)(1).

**D. The Bankruptcy Proceedings and Subsequent Events.**

Tehum filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas on February 13, 2023. *In re Tehum Care Servs., Inc.*, Case No.

23-90086 (CML) (Bankr. S.D. Tex.). On March 3, 2025, the Bankruptcy Court entered an order (the "Confirmation Order") confirming Tehum's First Modified Joint Chapter 11 Plan[1] (the "Plan"). The Plan identifies each Moving Defendant as either a Released or Non-Released Party. Moreover, the Plan conditioned releases and injunctions on timely performance of settlement payment obligations to two newly established trusts; however, those payments were not made, and the cure period has expired. As a result, the channeling injunction was terminated, the releases were canceled and nullified, and that the statute of limitations for claims was tolled and extended through June 3, 2026.

The Plan also sets forth which claims belong to which parties. The Plan created two trusts—the GUC Trust and the PI/WD Trust (collectively, the "Trusts")—and transferred all "Retained Causes of Action" to them. Plan, Art. IV, § F(1)(d) (GUC transfer) and Art. IV, § F(2)(d) (PI/WD transfer). Under the Plan, "Retained Causes of Action" includes "Released Estate Causes of Action" in the event that the "Estate Release" does not go into effect because of a Settlement Payment Default. *Id.* at Art. I, ¶ 177. Pursuant to the Plain, "Released Estate Causes of Action" include "any Estate Cause of Action against a Released Party that is released under **<u>Article IV.B.9</u>** and **<u>Article IX.C</u>** of the Plan." These claims include, as relevant here, claims:

> in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission,

[1] *In re Tehum Care Servs., Inc.*, No. 23-90086, ECF No. 2014 (Bankr. S.D. Tex. Mar. 3, 2025).

> transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

(*Id.* at Art. IV.B.9 and IX.C)

Under the Bankruptcy Code, the Trusts are Tehum's successors and representatives. 28 U.S.C. § 1123(a)(5), (a)(7), and (b)(3)(B). As such, the trusts have the exclusive authority and power to commence all "Retained Causes of Action." *Id.* at Art. IV, § F(1)(h) and Art. IV, § F(2)(g). Here, Plaintiff "opted out" of the Consensual Claimant Release. *Id.* at Exhibit A. This means that Plaintiff retained only claims or theories of recovery based on successor liability against YesCare Corp., CHS TX, Inc., or any other alleged successor entity — not veil-piercing claims, which the Plan defines as an "Estate Cause of Action." *See* Plan, Art. I, § 77, that only the Trusts have exclusive authority to pursue as Retained Causes of Action, Plan, Art. III.F.7(a). The Trustees have brought claims against Lefkowitz and Perigrove, among others, in an adversary proceeding in the Bankruptcy Court, alleging similar claims and theories as Plaintiff does here. *See In re Tehum Care Services, Inc.*, Case No. 23-90086 (CML), Doc. 2653.

## LAW AND ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER LEFKOWITZ AND PERIGROVE

### A. Legal Standard for Rule 12(b)(2) Motion to Dismiss.

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) test a plaintiff's theory of personal jurisdiction and the facts supporting it. *Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1139 (D.N.M. 2011). Where a defendant timely challenges personal jurisdiction, *the plaintiff* bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements. *Overton v. United States,* 925 F.2d 1282, 1283 (10th Cir. 1991). When a defendant

couples a 12(b)(2) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). If jurisdiction is lacking, the court cannot render a valid judgment on the merits of the other issues. *Id.*

**B. The Law on Personal Jurisdiction.**

Before a federal court can assert personal jurisdiction over a defendant, it must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (cleaned up).

*1. New Mexico's Long-Arm Statute.*

New Mexico has a long-arm statute, NMSA 1978, § 38–1–16, which is coextensive with constitutional limitations the due process-clause imposes. *Tercero v. Roman Cath. Diocese of Norwich, Connecticut*, 48 P.3d 50, 54 (N.M. 2002). In such circumstances, New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant. *Id.*

*2. Constitutional Due Process Limitations.*

The minimum-contacts inquiry "protects the defendant from having to defend a lawsuit in a jurisdiction where it has no meaningful contacts and therefore may be unfamiliar with both the substantive and procedural law." *Origins Natural Res., Inc. v. Ben Kotler and LDI, L.L.C.*, 133 F. Supp. 2d 1232, 1235 (D.N.M. 2001). The minimum contacts standard may be met in two ways: specific jurisdiction or general jurisdiction.

Specific jurisdiction exists when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The minimum contacts necessary for specific

personal jurisdiction are established "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Walker*, 801 F. Supp. 2d at 1142 (cleaned up).

General jurisdiction exists when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the suit is unrelated to the defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, n. 9 (1984). Put another way, a court may assert general jurisdiction over a corporation or individual when their "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up).

In either case, the court must confirm that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

**C. This Court Lacks General Jurisdiction Over Lefkowitz or Perigrove**

*1. This Court Lacks General Jurisdiction Over Lefkowitz.*

Plaintiff's Third Amended Complaint is not clear on whether he claims that Lefkowitz is subject to general or specific jurisdiction in this action. Plaintiff solely alleges that "Mr. Lefkowitz has personally overseen Corizon, CHS TX and YesCare business activities in New Mexico, and has travelled to New Mexico to appear in settlement proceedings related to those business activities." (ECF No. 246, ¶ 33.) To the extent that Plaintiff claims these alleged activities subject Lefkowitz to general jurisdiction in New Mexico, Plaintiff is wrong.

In *Shrader v. Biddinger*, one of the defendants (Stewart) had an ongoing contractual/business relationship with the Oklahoma plaintiff and had personally visited Oklahoma

once for eleven days to work directly with him. 633 F.3d 1235, 1246-47 (10th Cir. 2011). Despite these facts, the Tenth Circuit held that "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Id.* The Tenth Circuit likewise held that "sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction," and that the "lack of a regular place of business" in New Mexico "is significant, and is not overcome by a few visits." *Id.*

In *Trierweiler v. Croxton & Trench Holding Corp.*, the Tenth Circuit held that an individual defendant (Watt, who served as a corporate "of counsel" and advisory board chairman of one of the defendants) who "often visit[ed] Colorado but [did] a relatively small amount of business in the state" did not have contacts rising to the "continuous and systematic level necessary to confer general jurisdiction." 90 F.3d 1523, 1544 (10th Cir. 1996). The Tenth Circuit emphasized that courts are "equally demanding where defendants were individuals rather than corporations." *Id.*

*Shrader* and *Trierweiler* control the analysis here, and the outcome should be the same. Lefkowitz is not domiciled in New Mexico. He is instead a resident of, and domiciled in, New York. Ex. 1, Decl. He has no ties to New Mexico at all and has never been to New Mexico in any capacity or any purpose. Plaintiff's allegation that Lefkowitz traveled to New Mexico to appear in settlement proceedings related to his business activities is simply not true. (ECF No. 246, ¶ 33; Ex. 1, Decl.) But even if it were, the result would be the same. Just like visiting Oklahoma for 11 days for business and having a contractual relationship with a plaintiff there was insufficient to confer personal jurisdiction (*Shrader*), and just like "often" visiting Colorado and conducting a small amount of business there was insufficient to confer personal jurisdiction (*Trierweiler*), Lefkowitz's sporadic and isolated visits to New Mexico for settlement proceedings will not subject him to general jurisdiction in New Mexico. *See also Wilson v. Belin*, 20 F.3d 644, 650–51 (5th Cir. 1994)

(Texas could not assert general jurisdiction over defendant who carried malpractice insurance through a Texas law firm for one year, did three legal projects in Texas in three years, gave a seminar in Texas, and served as a pro bono consultant to a Dallas historical society, among other activities).

*2. This Court Lacks General Jurisdiction Over Perigrove.*

This Court similarly lacks general jurisdiction over Perigrove because it is “not at home” in New Mexico. Plaintiff concedes that Perigrove is a New York limited liability company. (ECF No. 246, ¶ 34.) The only connection Perigrove has to this matter is that, according to Plaintiff, in 2021, Lefkowitz used Perigrove to purchase Corizon and its related entities. (*Id.* at ¶ 35.) That is insufficient as a matter of law. This Court in *Strong v. Scout Sec., Inc.*, found that the defendant corporation was not “at home” in New Mexico because it was a Delaware corporation with its principal place of business in Illinois; it was not registered to do business in New Mexico; it did not have an appointed agent for service in New Mexico; it did not have a telephone listing or office in New Mexico; it did not have bank accounts, real property, or employees in New Mexico; and, it did not advertise, market, or solicit business in New Mexico. 2022 WL 266709, at *4 (D.N.M. Jan. 28, 2022).

The same is true here. Other than serving as an investment vehicle for the purchase of a company that did business in New Mexico (and across the country), Perigrove has no connection to New Mexico. It is a New York limited liability company with its principal place of business in New York. Ex. 1, Decl. It is not registered to conduct business in New Mexico and it does not have an agent designated for service in New Mexico. It has no employees in New Mexico nor does it have a bank account in New Mexico. Accordingly, there is no basis for asserting general personal

jurisdiction over Perigrove. *Strong*, 2022 WL 266709, at *4; *see also Rosenberg v. Deutsche Bank AG*, 2012 WL 1963356, at *6 (D. Colo. May 22, 2012) (no general jurisdiction on similar facts).

**D. This Court Lacks Specific Jurisdiction Over Lefkowitz or Perigrove**

*1. Lefkowitz and Perigrove have no minimum contacts with New Mexico.*

Due process "minimum contacts" are established only where the nonresident defendant has "purposefully avail[ed] itself of the privilege of conducting activities in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up). "Purposeful availment" is required so that a nonresident defendant will not be forced to defend itself in a forum with which its contacts are only "random, fortuitous, or attenuated." *Id.* In judging minimum contacts, the court focuses on the relationship among the defendant, the forum, and the litigation. *Allen v. Toshiba Corp.*, 599 F. Supp. 381, 388 (D.N.M. 1984) (cleaned up).

In *Allen*, the court found that an individual who sued for acts allegedly committed in a corporate capacity — where the individual was never a resident of New Mexico, never owned real property in New Mexico, derived no personal income from New Mexico, and conducted business with the plaintiff solely within the scope of employment — lacked sufficient personal contacts to support jurisdiction. *Id.* at 383-89.

This Court's decision in *Tompkins v. Exec. Comm. of the S. Baptist Convention (ECSBC)*, 2014 WL 11512613 (D.N.M. Sept. 5, 2014), *report and recommendation adopted in part, rejected in part sub nom.*, 2014 WL 11514670 (D.N.M. Sept. 30, 2014), is also instructive. *Tompkins* involved a convoluted dispute where two lessees at a Baptist conference center, who were unhappy that their ground lease was not renewed, sued over 100 defendants (entities and officers/directors) to try to unwind a separate sale of the broader property to a new entity (Glorieta 2.0, Inc.). 2014 WL 11512613 at *13-14. Magistrate Judge Scott issued a lengthy Report and Recommendation on

various motions, including several motions to dismiss for lack of personal jurisdiction filed by the individually named defendants. Relevant here, Judge Scott found that the Court lacked specific personal jurisdiction over one defendant (Weekley) when he only "traveled to New Mexico twice on the business of Glorieta 2.0 []," including to meet with leaseholders at the conference center and after the conference center was transferred to Glorieta 2.0 to meet with the executive director to discuss commencing operations. *Id.* at *23-24.

The Court emphasized that "[t]hese [trips] were undertaken by Mr. Weekley solely in his capacity as a Director of Glorieta 2.0, Inc. and solely for the purpose of furthering its business," that Weekley did not have any personal dealings with the plaintiffs other than his service as a director of Glorieta 2.0, and that had never conducted any personal business in New Mexico. *Id.* The Court applied a similar analysis to several other officers/directors, who had visited New Mexico, in part, in connection with work related to the conference center, and found that these visits were insufficient to establish specific personal jurisdiction. *Id.* at *19-22. District Judge Browning adopted the findings on the jurisdictional issues in full. 2014 WL 11514670.

In *Strong*, this Court similarly rejected another attempt to subject out-of-state individual defendants to specific personal jurisdiction when those defendants only acted in other jurisdictions; their conduct occurred entirely outside of New Mexico and was unrelated to New Mexico; and, whose only connection to New Mexico was through the plaintiff. *Strong*, 2022 WL 266709, at *9.

Here, the only alleged contact between Lefkowitz and this forum is that he allegedly oversaw the business activities of several entities there and has appeared for unspecified settlement proceedings in unspecified matters, which Lefkowitz denies. (ECF No. 246, ¶ 33; Ex. 1, Decl.) But, even if these allegations were true, these are the types of random, fortuitous, or attenuated contacts that the Supreme Court has held are insufficient to establish specific jurisdiction, and that

courts specifically rejected in *Allen, Tompkins,* and *Strong*. Accordingly, Plaintiff fails to establish that Lefkowitz has sufficient minimum contacts with New Mexico.

In *Weisler v. Cmty. Health Sys., Inc.*, this Court held that the holding companies who had no employees in New Mexico, did not transact business in New Mexico, and had no offices, property, or clients in New Mexico lacked sufficient contacts with New Mexico to establish specific jurisdiction. 2012 WL 4498919, at *6 (D.N.M. Sept. 27, 2012). As to Perigrove, the only alleged contact is that Perigrove purchased Corizon and its related entities. (ECF No. 246, ¶ 35.) There are *no other* alleged connections between Perigrove and New Mexico. As a result, Perigrove lacks sufficient minimum contacts with New Mexico to establish specific personal jurisdiction.

*2. Even if there were minimum contacts, this lawsuit and the injuries claimed do not arise out of those contacts.*

Not only must Plaintiff establish sufficient minimum contacts with the forum, Plaintiff must also establish that the injuries giving rise to the lawsuit arise from those specific contacts. Plaintiff entirely fails to allege that in his Complaint. (ECF No. 246, ¶¶ 31-78.) That is because there is no connection between the injuries alleged in this lawsuit and Lefkowitz's/Perigrove's alleged contacts with New Mexico. The crux of Plaintiff's lawsuit is that while Garcia was incarcerated at DACDC in August 2019, various defendants neglected his requests for medical care leading to his death. (ECF No. 246, ¶¶ 5, 79-198.) These events occurred in 2019—two years *before* Plaintiff alleges that Lefkowitz, through Perigrove, purchased Corizon and its related entities. (*Id.* at ¶ 35, 79.) It is axiomatic that, if the alleged contacts did not occur until *after* the alleged injuries took place, then the injuries cannot arise out of those contacts.

In *Weisler*, the plaintiff brought medical malpractice claims from a 2008 surgery at a hospital in Hobbs, New Mexico. 2012 WL 4498919, at *6. The plaintiff alleged that the defendants Community Health Systems, Inc. and Community Health Investment Company, LLC, owned,

operated, or leased the hospital and were liable under respondeat superior theories. *Id.* In attempting to support his claim that Community Health Systems, Inc. was subject to specific personal jurisdiction in New Mexico, the plaintiff relied on a newspaper article from 2001 in which the CEO made various comments about the ownership structure related to the hospitals it owned and operated. This Court rejected the plaintiffs' attempts to establish specific personal jurisdiction because the plaintiff failed to demonstrate "how his injuries in 2008 arose out of or relate to Defendant CHSI's purported 2001 contact with New Mexico." *Id.* at *6.

The same logic applies with equal force here and the outcome should be the same. Plaintiff claims that Lefkowitz, through Perigrove, only purchased Corizon and its related entities sometime in 2021. (*Id.* at ¶ 35.) Yet, the alleged injuries giving rise to this lawsuit occurred in 2019. (ECF No. 246, ¶¶ 5, 79-198.) Plaintiff cannot establish that his alleged injuries in 2019 arise out of relate to Lefkowitz's or Perigrove's alleged contacts beginning, at the earliest, some time in 2021. There is no connection between these alleged contacts and Plaintiff's claimed injury. For this additional reason, Plaintiff fails to establish specific jurisdiction over Lefkowitz and Perigrove. *Weisler*, 2012 WL 4498919, at *6; *see also Frye v. Ulrich GmbH & Co. KG*, 2009 WL 801773, at *5 (M.D. Ala. Mar. 25, 2009) (contacts with Alabama "did not give rise to the injuries complained of by Plaintiffs because the contacts occurred after the injuries" and the "absence of contacts prior to the injury makes it unforeseeable that [the defendant] would be haled into the courts in Alabama.").

*3. The exercise of specific personal jurisdiction would not be reasonable under these circumstances.*

This Court must next determine whether the exercise of jurisdiction is reasonable such that it comports with "traditional notions of fair play and substantial justice." *Helicopteros*, 466 U.S. at 414. Although "a State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," that interest does not

allow the forum to unreasonably exercise jurisdiction over nonresident defendants. *Burger King*, 471 U.S. at 473. Plaintiff cannot demonstrate that exercising jurisdiction over Lefkowitz or Perigrove would be reasonable here.

As to Lefkowitz, other than some sporadic visits to New Mexico in his capacity as a representative of a corporate party, Lefkowitz has no connection whatsoever to New Mexico. Ex. 1, Decl. And, as to Perigrove, it is merely an investment vehicle and does not otherwise own, oversee, or operate the business. Ex. 1, Decl. Indeed, under New Mexico law, the general rule is to respect the separateness of distinct corporate entities, including parents and their subsidiaries. *Allen*, 599 F. Supp. at 389-90. Accordingly, a foreign parent corporation may not be forced to litigate in a particular forum merely because it has a subsidiary there. *Id*. Given the foregoing, even if Plaintiff could establish minimum contacts and his injuries here arose because of those contacts, it would still be unreasonable for this Court to exercise jurisdiction over Perigrove and Lefkowitz.

**C. Plaintiff Cannot Use Alter Ego Theories to Establish Jurisdiction.**

To the extent that Plaintiff attempts to use alter ego theories as a means of establishing jurisdiction over Lefkowitz and Perigrove by contending that they conducted business in New Mexico through Corizon, that attempt fails.

The general rule is that "judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation even if the parent owns all of the subsidiary's stock." Restatement (Second) of Conflicts of Laws § 52 cmt. b (1971) (cleaned up); *Alto Eldorado Partnership v. Amrep Corp.*, 124 P.3d 585, 596 (N.M. Ct. App. 2005) (as a general matter, "the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state") (cleaned up).

An exception to this rule exists, however, where circumstances justify disregard of the corporate entity, and in such cases, the contacts of the subsidiary may be imputed to the parent for purposes of establishing jurisdiction over the parent. *See Quarles v. Fuqua Indus.*, 504 F.2d 1358, 1362 (10th Cir. 1974). The relevant factual inquiry is whether the parent actually controlled its subsidiary – *i.e.*, exercised domination of the day-to-day business decisions of the subsidiary and a disregard of the corporate entity of the subsidiary – thereby giving rise to personal jurisdiction over the parent." *Weisler*, 2012 WL 4498919, at *12; *see also Alto*, 124 P.3d at 596-97 (holding that where the plaintiffs made a prima facie showing that the parent "did not simply own [the subsidiary]" but in fact "completely controlled it to the point where [the subsidiary] existed as little more than an instrument to serve" the parent's interests, the parent had "minimum contacts with New Mexico [ ] sufficient to satisfy due process concerns").

Both the Tenth Circuit Court of Appeals, and the New Mexico Supreme Court have identified numerous factors that may be relevant to the question of whether a subsidiary is the alter ego of a parent corporation:

> (1) The parent corporation owns, all or [a] majority of the capital stock of the subsidiary. (2) The parent and the subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department of division. (9) The directors and executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Miligo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 660 (10th Cir. 1980); *Cruttenden v. Mantura*, 640 P.2d 932, 934-35 (N.M. 1982). Ultimately, the "inquiry will

turn on the facts of each case," and "must be focused on minimum contacts." *Nat'l Fair Hous. All. v. Brookdale Santa Fe*, 621 F. Supp. 3d 1271, 1279 (D.N.M. 2022)

These factors do not support the exercise of jurisdiction in this case. The only allegations as to alter ego in Plaintiff's Third Amended Complaint come from the Adversary Complaint filed by the Bankruptcy Trustees in the Southern District of Texas. That is insufficient as a matter of law because "[f]actual allegations in unverified pleadings are not evidence to be considered in a factual inquiry." *United States v. Aguirre*, 245 F. App'x 801, 802–03 (10th Cir. 2007). This would be true even those allegations were eventually adjudicated. *Brookdale*, 621 F. Supp. 3d at 1280.

But even if these allegations were accepted as true at this stage, they would still fall short of what is required to establish sufficient minimum contacts using an alter ego theory. For example, in *Weisler*, the Court found insufficient minimum contacts based on alter ego theories where the parent did not control the subsidiary or its directors; did not run the day-to-day operations; did not share board members; did not subsidize the losses of the subsidiary; did not share bank accounts, staff, tax returns, or payroll. Nor was there evidence that the subsidiaries' concerns were subordinated to the parent's. *Weisler*, 2012 WL 4498919, at *13. Similarly in *Lucero v. Carlsbad Med. Ctr., LLC*, this Court found that the parent corporation, which owned a medical center, was not subject to personal jurisdiction in New Mexico because it did not perform actions in or conduct business in New Mexico and had no discernable contacts with New Mexico. 2018 WL 3209406, at *3-5 (D.N.M. June 29, 2018).

This case is similar to *Weisler* and *Lucero*. Just as in those cases, there are no credible allegations that Lefkowitz or Perigrove completely controlled Corizon to the point where it existed as little more than their instrument. There are also no allegations (or proof) that Corizon's day-to-day operations were run by an employee of Perigrove or that Corizon's concerns were ignored in

favor of the parent's or that the parent subsidized Corizon's losses. The only allegations present are those conclusory allegations lifted from the Adversary Complaint. For these reasons, Plaintiff also fails to establish jurisdiction using alter ego.

## II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S VEIL PIERCING AND ALTER-EGO CLAIMS BECAUSE THOSE CLAIMS BELONG TO THE BANKRUPTCY TRUSTS

### A. The Law on Standing.

Federal courts have jurisdiction only over "cases or controversies" arising under the Constitution and federal law. *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024). Without jurisdiction conferred by statute or the Constitution, federal courts lack power to adjudicate claims and must dismiss an action when subject matter jurisdiction is absent. *Kucera v. Cent. Intel. Agency*, 347 F. Supp. 3d 653, 658 (D.N.M. 2018). The party asserting jurisdiction bears the burden of establishing it. *Childers v. FedEx Ground Package Sys., Inc.*, 735 F. Supp. 3d 1393, 1396 (D.N.M. 2024).

### B. Only the Trusts Have Standing to Assert the Claims and Theories in Count V.

Plaintiff lacks standing to pursue Count V because the claims and theories contained in it belong to the two Trusts established by the Plan, not to individual creditors. Section 541 of the Bankruptcy Code provides that "all legal or equitable interests of the debtor in property," including causes of action belonging to the debtor, become property of the bankruptcy estate. *See* 11 U.S.C. § 541. Where the alleged injury is to the debtor, and any injury to creditors is derivative, the claim belongs to the estate, and individual creditors lack standing to prosecute it. *See, e.g.*, *In re Herrera*, 472 B.R. 839, 844 (Bankr. D.N.M. 2012); *In re Elrod Holdings Corp.*, 392 B.R. 110, 114 (Bankr. D. Del. 2008) (an individual creditor may not assert a general claim belonging to all creditors and where a claim could be brought by any creditor, it must be asserted by the estate's representative).

The theories in the Third Amended Complaint—including the Count V, which seeks to pierce the corporate veil and depends on alter ego theories—are quintessential estate claims under both settled law and the Plan's plain terms.

> 77. "*Estate Causes of Action*" means Causes of Action owned, held, or capable of being asserted by, under, through or on behalf of the Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions under chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the foregoing, Estate Causes of Action shall include: (a) Causes of Action that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable state law, including Causes of Action seeking to impose liability based on (i) the doctrine of successor liability, or (ii) the doctrines of alter ego or veil piercing; (b) Causes of Action that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of the Debtor and can be asserted by the Debtor under applicable state law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.

*See In re Tehum Care Servs., Inc.*, No. 23-90086 (CML), ECF No. 2014 (Bankr. S.D. Tex. Mar. 3, 2025) at Exhibit B Art. I, ¶ 77 (emphasis added). Likewise, paragraph 177 of the Plan specifically provides that the term "Retained Causes of Action…shall include the Released Estate Causes of Action[2] if the Estate Release does not go into effect due to a Settlement Payment Default…" *Id.* at Exhibit B Art. I, ¶ 177.

As noted, two Trusts were created pursuant to the Plan —the GUC Trust and the PI/WD Trust—and all Retained Causes of Action were transferred to them. *See id.* at Exhibit B, Art. IV, § F(1)(d) (transfer of GUC Trust Assets to the GUC Trust), Art. IV, § F(2)(d) (transfer of PI/WD Trust Assets to the PI/WD Trust). The Trusts are Tehum's successors and representatives pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and "have the ***exclusive*** authority and power to…commenc[e], prosecut[e], and settl[e] all Retained [] Causes of Action. *Id.* at Exhibit B, Art. IV, § F(1)(h) (GUC Trust as Successor to the Debtor and Its Estate); Art. IV,

[2] The term "Released Estate Causes of Action" means "any Estate Cause of Action against a Released Party," and the term "Released Parties" includes, *inter alia*, Lefkowitz and Perigrove. *Cf.* Exhibit B Art. I, ¶¶ 174, 175, 182.

§ F(2)(g) (PI/WD Trust as Successor to the Debtor and Its Estate) (emphasis added). Simply put, Plaintiff's theories are Retained Causes of Action that vested in and are owned by the Trusts. The Trusts alone may prosecute them, and therefore Plaintiff lacks standing to assert this Claim.

And, even if Plaintiff could pursue these claims, principles of comity and the interest in avoiding inconsistent judgments/results counsels against Plaintiff pursuing his claims here when the Bankruptcy Trustee is already litigating these claims in the Bankruptcy Court. *King v. Union Oil Co. of California*, 117 F.3d 443, 447 (10th Cir. 1997) (courts disfavor piecemeal litigation).

## III. VEIL PIERCING IS A REMEDY, NOT A CAUSE OF ACTION, AND PLAINTIFF DOES NOT PLEAD THE NECESSARY ELEMENTS

### A. Standard for a Rule 12(b)(6) Motion.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim on the grounds that a Plaintiff has failed to state a claim upon which relief can be granted. A court must determine whether the plaintiff has pleaded facts that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Veil Piercing Is Not a Standalone Cause of Action.

As a threshold matter, Count V fails for the simple reason that veil piercing is not an independent cause of action under New Mexico law, rather it is a remedy. For example, in *Scott v. AZL Res., Inc.*, the New Mexico Supreme Court observed that "New Mexico decisions have held that piercing the corporate veil is an equitable remedy." 753 P.2d 897, 900 (N.M. 1988). And this makes sense when considering the purpose behind veil piercing is to provide a remedy to creditors against individuals who improperly hide behind a corporate veil. *Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1179 n. 14 (C.D. Cal. 2018).

Plaintiff puts the cart before the horse. As the Third Amended Complaint confirms, "Plaintiff [] seeks a judgment against Mr. Lefkowitz, and Perigrove 1018 at trial, *should Plaintiff prevail in his claims*[.]" (ECF No. 246, ¶ 77 (emphasis added).) Until and unless Plaintiff obtains a judgment and then is unable to collect, there is no basis for Plaintiff to seek any equitable veil piercing remedies. For this reason, Plaintiff's Third Amended Complaint must be dismissed.

**C. The Third Amended Complaint Fails to State a Claim for Veil Piercing.**

"[A] holding or parent company has a separate corporate existence and is treated separately from its subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Quarles*, 504 F.2d at 1362; *see also Scott*, 753 P.2d at 900. The court will pierce the corporate veil to hold a parent corporation liable for the acts of its subsidiary "where the [subsidiary] corporation was set up for fraudulent purposes or where to recognize the [subsidiary] corporation would result in injustice." *Id.* at 900. "The standards for the application of alter ego principles are high, and the imposition of liability notwithstanding the corporate shield is to be exercised reluctantly and cautiously." *McCulloch Gas Transmission Co. v. Kansas-Nebraska Natural Gas Co.*, 768 F.2d 1199, 1200 (10th Cir. 1985).

In New Mexico, to establish a veil piercing claim, a plaintiff must show that (i) the corporate form is a mere instrument or alter ego of another person; (ii) the corporate form has been used for an improper purpose; and (iii) proximate cause. *Albuquerque Facility, LLC v. Danielson*, 181 F. Supp. 3d 924, 932 n 4 (D.N.M. 2016) (cleaned up). Piercing the corporate veil should be done "reluctantly and cautiously" and only "when the corporate structure has been misused to perpetrate fraud, evade existing obligations, or to circumvent a statute." *Scott*, 753 P.2d at 900. Plaintiff's Third Amended Complaint fails on each element.

*1. Plaintiff has Failed to Plead Facts Establishing that Corizon Was a Mere Instrumentality of Lefkowitz or Perigrove.*

The requirement of instrumentality or domination (sometimes referred to as the alter ego doctrine) "means proof that the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control and for the purposes of some dominant party." *Id.* at 900. "To find that a subsidiary is the alter ego of the parent corporation, it must be established that the parent control is so complete as to render the subsidiary an instrumentality of the parent." *Cruttenden*, 640 P.2d at 934. "Control is not mere majority or complete stock control, but complete domination not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Garcia v. Coffman*, 946 P.2d 216, 220 (N.M. Ct. App. 1997) (cleaned up). In conducting this analysis, courts utilize the same ten-factor test discussed above in Section II(C).

As a threshold matter, Plaintiffs' claim here fails because, in essence, Plaintiffs have skipped the analysis of several corporate layers that existed immediately at the time of purchase, and instead seek to pierce directly to Corizon. On December 7, 2021, immediately upon the acquisition, Perigrove 1018, LLC owned Corizon Health, Inc. through two intervening entities: Valitás Intermediate Holdings, Inc. and Valitás Health Services, Inc. As of December 7, 2021, Perigrove 1018 owned or controlled Corizon and its affiliates, including Valitás Intermediate Holdings, Inc., which itself owned Valitás Health Services, Inc., Corizon Health, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC. (Adv. Compl. ¶ 46.) Counting Perigrove 1018 itself, three entities separated Lefkowitz from Corizon at the moment of purchase, since Lefkowitz is alleged only as an investor in Perigrove, not its owner. (*Id.* at ¶ 30.)

But even if that were not the case, Plaintiff has failed to plead facts that would establish that Corizon was an alter ego of Lefkowitz/Perigrove. As Plaintiff admits, Lefkowitz and Perigrove

had nothing to do with Corizon until 2021, at the earliest. (ECF No. 246, ¶¶ 31, 33.) Even if the post-closing conduct were relevant for purposes of this analysis, Plaintiff's allegations are insufficient to state a claim for veil piercing because Plaintiff has failed to plead any of the classic hallmarks thereof—lack of adherence to corporate form, comingling of assets, under capitalization, and the like. *Cruttenden*, 640 P.2d at 934-35 (setting forth factors). Indeed, Plaintiff simply assumes that because Corizon is bankrupt, it may pierce the corporate veil. This is simply not the law in this New Mexico or anywhere else.

Rather, Plaintiff's Third Amended Complaint, along with its reliance on the Adversary Complaint, pleads facts establishing that veil piercing is not appropriate here. For example, Plaintiff only cursorily pleads a lack of corporate formalities, alleging in a single conclusory sentence that "Mr. Lefkowitz failed to keep corporate formalities" without a single supporting fact. (ECF No. 246 ¶ 65.) A pleading that offers mere legal conclusions, or a recitation of the cause of action, is insufficient. *Iqbal*, 556 U.S. at 678. On the other hand, the Adversary Complaint on which Plaintiff relies affirmatively pleads that Corizon had its own executive team who executed numerous corporate filings (certificates of conversion, certificates of merger, certificates of formation, etc.) (Adv. Compl. ¶¶ 35–40, 125–134.) An entity whose own officers are executing state-law corporate filings in its own name is not, on these pleadings, an entity without a separate mind, will, or existence of its own.

Nor does Plaintiff plead facts showing commingling of assets in the sense *Cruttenden* requires — a blending of the parent's and subsidiary's own funds to the parent's benefit. Plaintiff alleges only that Lefkowitz "caused Corizon to comingle and divert funds and assets for the benefit of Perigrove [] and himself." (ECF No. 246 ¶ 62.) Again, a legal conclusion is not a fact. *Iqbal*, 556 U.S. at 678.

Nor did Plaintiff plead how Corizon was "grossly" undercapitalized — indeed, Plaintiff pleads no capitalization facts of any kind, let alone facts showing Corizon was undercapitalized "when incorporated" as *Scott* requires. 753 P.2d at 901. Quite the opposite, Plaintiff pleads that Corizon had $24.5 million in cash and that it had profitable assets and contracts for prison healthcare services. (ECF No. 246, ¶¶ 42, 46-47.) A company with these sorts of assets cannot be considered undercapitalized, let alone an alter ego. *Scott*, 753 P.2d at 901 (observing that insolvency is insufficient to show alter-ego and that the fact that each corporation at issue "conducted business in its own name, received income from such businesses in each of their own accounts and owned valuable assets" tended to show that "they were not sham corporations.").

Plaintiff also fails to plead facts showing that Corizon had "substantially no business except with [Perigrove] or no assets except those conveyed to it by [Perigrove]" — one of the *Cruttenden* factors. *Cruttenden*, 640 P.2d at 934–35. To the contrary, Plaintiff's own pleading establishes that Corizon was a decades-old, independently operating nationwide provider of correctional healthcare with its own government contracts long before Perigrove or Lefkowitz had any involvement. (ECF No. 246 ¶¶ 45–46; Adv. Compl. ¶¶ 42–46.) An entity that predates its alleged dominator's involvement by decades, and that generated its own independent revenue through its own contracts is not the kind of shell or conduit entity the alter-ego doctrine targets. *See Cruttenden*, 640 P.2d at 934 (rejecting alter-ego finding where the record showed only that agreements "have been assigned to and now operate under" the subsidiary, without more).

*2. Lefkowitz and Perigrove Did Not Use Corizon for an Improper Purpose.*

The improper-purpose requirement recognizes that "[m]ere control by the parent corporation is not enough to warrant piercing the corporate veil. Some form of moral culpability attributable to the parent, such as the use of the subsidiary to perpetrate a fraud is required." *Scott*, 753 P.2d at 901. Plaintiff does not plead this, nor could he. At the time that

Plaintiff's alleged injuries took place in 2019, Lefkowitz and Perigrove had nothing to do with Corizon for. None of the actions Lefkowitz and Perigrove took impacted Plaintiff directly—his injuries already occurred.

*3. Lefkowitz and Perigrove Did Not Cooperate to Cause Unjust Injury to Plaintiff.*

As for the proximate-causation requirement, there must be a showing of "some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff." *Garcia*, 946 P.2d at 221. The injuries of which Plaintiff complains relate to his alleged improper medical care that he received from Corizon in 2019 *before* Lefkowitz/Perigrove purchased Corizon. Simply put, Lefkowitz and Perigrove exercised no control over those actions.

And to the extent that Plaintiff's injury arises from the post-purchase time period, Plaintiff lacks standing to assert those claims as they belong to the two Trusts established by the Plan, not to individual creditors, as discussed above in Section II(B), and are already being pursued by the bankruptcy Trustees. Accordingly, Plaintiff's Complaint fails on proximate causation as well.

**CONCLUSION**

For the foregoing reasons, Moving Defendants respectfully request that this Honorable Court grant their Motion and dismiss the Third Amended Complaint as to them in its entirety.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

Date: August 10, 2026

By: */s/ Craig Morgan*
Craig Morgan (Bar No. 165222)
6501 Americas Pwky.
Albuquerque, NM 87110
(505) 431-5100
cmorgan@taftlaw.com
*Attorneys for Moving Defendants*