**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

HECTOR GARCIA JR., as Personal Representative
To the Estate of Hector Garcia,

Plaintiff,

v. No. 2:21-cv-00485-DHU-GJF

CHS TX, INC., as Successor in Interest to CORIZON HEALTH, INC.,
VERONICA SALAZAR, CHRISTI BENNETT,
MELISSA GARCIA, GLADYS HERNANDEZ,
HEATHER BARELA, EDUARDO BERUMEN,
ISAAC LEFKOWITZ and PERIGROVE 1018,

Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS ISSAC LEFKOWITZ AND PERIGROVE 1018'S MOTION TO DISMISS**

COMES NOW Plaintiff, Hector Garcia Jra, by and through his attorney of record, Coyte Law P.C. (Matthew Coyte) and responds as follows to Defendants' Yitzchak Lefkowitz and Perigrove 1018, LLC's Motion to Dismiss Pursuant to Fed.R.Civ.P.12(B)(1), (2) and (6) (ECF 268).

## INTRODUCTION

On April 27, 2026, Plaintiff learned about the fraudulent conduct associated with Isaac Lefkowitz's attempt to drain assets from his newly purchased corporation, Corizon, and leave it with the potential debts of hundreds of unresolved lawsuits. Mr. Lefkowitz called this plan "Project Orange" and used the controversial bankruptcy tactic known as the "Texas Two-Step" to accomplish his goals. However, Mr. Lefkowitz defaulted on his obligations under the bankruptcy

plan he negotiated. As a result, the federally appointed bankruptcy trustees filed a complaint describing his fraudulent conduct. Complaint, *Dundon v. Lefkowitz*, Adv. Pro. No. 26-03138 (Bankr. S.D. Tex. Apr. 27, 2026), ECF 1. The complaint relies on the extensive discovery undertaken during the bankruptcy including the depositions of Corizon corporate representatives, such as Mr. Lefkowitz. The trustees are in the unique position of standing in the shoes of Corizon (later renamed Tehum) and consequently their access to corporate documents, including fraudulent bank statements, allowed them to bring alter ego and veil piercing allegations against Mr. Lefkowitz and Perigrove 1018.[1] In a nutshell, the trustees allege Lefkowitz forged bank statements to conceal the fact he had drained assets from Corizon while simultaneously diverting new governmental contracts to a newly formed (and identical business) called CHS TX which was then purchased for $100 by a newly formed entity, YesCare. As a result, New Mexico citizens who had been harmed by Corizon were left with no assets to collect from the fraudulently bankrupt Corizon. YesCare (owned and controlled by Lefkowitz) then continued where Corizon left off, providing substandard care to prisoners across the country, including the Dona Ana County Jail in New Mexico.

Once this information became available to Plaintiff, an amended complaint adding Isaac Lefkowitz and Perigrove 1018 was filed. Lefkowitz and Perigrove 1018 filed the instant motion to dismiss, alleging a lack of jurisdiction and included a motion to dismiss on the face of the complaint.

---

[1] The bankruptcy trustees also brought claims against individual executives and other corporate entities owned by Mr. Lefkowitz which Plaintiff elected not to pursue in this action.

Plaintiff will demonstrate that the standard for demonstrating personal jurisdiction is "light" and Plaintiff has provided more than enough facts, and well supporting allegations, to meet this burden. Plaintiff will also demonstrate that the Motion to Dismiss introduced evidence not contained in Plaintiff's Amended Complaint. Although this evidence may be used in a jurisdictional argument, Plaintiff objects to it being used to support a motion to dismiss based on the face of the complaint. Finally, Plaintiff will show how the Amended Complaint, when read in the light most favorable to Plaintiff, alleges more than enough facts to support a claim to pierce the corporate veil thereby defeating the 12(b)(6) motion.

## LEGAL STANDARD

**Personal Jurisdiction**

In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir.1998) (citation omitted). However, at the preliminary stages of litigation this burden is "light." *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). The plaintiff need only make a prima facie showing that jurisdiction is proper when the parties submit affidavits and other written material in support of their position. *Id*. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id*.

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Can., Ltd.*, 703 F.3d 488, 492 (10th Cir.2012) (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000) (internal citation omitted)). "New Mexico's long-arm statute, N.M. Stat. Ann.

¶ 38–1–16 (1971), 'is coextensive with constitutional limitations imposed by the Due Process Clause.'" *Id.* at 492–93 (internal citations omitted); *see also Smith v. Cutler*, 504 F.Supp.2d 1162, 1166 (D.N.M. 2007) ("New Mexico law merges the analysis of whether a defendant has transacted business or committed a tortious act within New Mexico with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns.") (internal citations omitted). In other words, New Mexico has construed its long arm statute to be coextensive with the outer limits of due process. *Sproul v. Rob & Charles, Inc.,* 2013-NMCA-072, ¶ 8.

**ARGUMENT**

The motion to dismiss presents the affidavit of Isaac Lefkowitz in which he admits he "led a group of investors" in the form of Perigrove 1018, to purchase Corizon Health Inc.. ECF 268-1 ¶¶ 3, 4. The affidavit goes on to deny that he has ever been in New Mexico and never "travelled to New Mexico to appear in "settlement proceedings"" *Id* at ¶¶ 8, 9. Interestingly, the affidavit made no attempt to dispute any of the other allegations in Plaintiff's Amended Complaint. This is important as Plaintiff's burden at this stage is "light". *Wenz,* 55 F.3d 1503. In fact, the Court must take all uncontroverted allegations as true unless they are merely conclusory. *Id*. Mr. Lefkowitz had an opportunity to deny important allegations related to his fraud and to the veil piercing allegations of the Third Amended Complaint (ECF 246) but chose not to do so. For example, he failed to deny that he and Perigrove 1018 operated Corizon as a mere instrumentality, extracting substantial value for himself and his associates. *Id* at ¶ 36. He did not dispute that he siphoned funds from Corizon for his own benefit. *Id* at ¶ 37. In fact, the affidavit made no attempt to dispute any of the outrageous facts associated with this case including the fact that he "fraudulently

falsified bank records for the Corizon Signature accounts to cover the fact he had drained Corizon of over $22 million. *Id* at ¶ 51.

Plaintiff's Amended Complaint therefore contains uncontroverted facts that have also been alleged by the federal bankruptcy trustee. They are not merely conclusory statements but are facts based on the depositional testimony of Mr. Lefkowitz and Corizon's own bank statements. See e.g. Exhibit A, Redline of Disclosure Statement at 86–87, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Oct. 27, 2023), ECF 1073-1 (a summary of the debtor (Corizon) and the creditor committee's investigation where they served eighteen (18) subpoenas and conducted eight depositions of Mr. Lefkowitz, including one in his capacity as a representative of Perigrove 1018 LLC.). At this stage in the proceedings, Plaintiff has no access to these documents, as they are sealed exhibits in the bankruptcy court. Appellants' Statement of Issues on Appeal at 15–16, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. May 7, 2024), ECF 1544. However, a summary of the fraudulent conduct revealed during the bankruptcy discovery process can be seen in a section entitled "Background and Events Leading up to Chapter 11." Exhibit A, Redline of Disclosure Statement at 19–28, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Oct. 27, 2023), ECF 1073-1. In other words, Plaintiff's veil piercing allegations are not mere conclusory statements, but are based on facts revealed during the Texas Two-Step bankruptcy. They also have not been disputed by Mr. Lefkowitz's affidavit in this matter and therefore the allegations "must be taken as true to the extent they are uncontroverted by defendant's affidavit." *Behagen v. Amatuer Basketball Ass'n of the U.S.A*. 744 F.3d 731, 733 (10th Cir. 1984).

To the extent the Lefkowitz affidavit can be construed as denying the alter ego allegations (something it does not do on its face), Plaintiff requests the Court to order jurisdictional discovery.

*See Mohon v. Arentra,* LLC 400 F.Supp.3d 1189, 1241 (D.N.M. 2019) (in which Judge Browning concluded the Tenth Circuit requires jurisdictional discovery in circumstances where jurisdictional facts are controverted). Plaintiff would seek to obtain the sealed documents in the bankruptcy case (with the aid of a protective order if necessary). These would include the documents used by the bankruptcy trustee to establish the near identical claims advanced in that forum. In other words, the jurisdictional discovery could be directed at obtaining documents and depositions already in existence. Obviously, a deposition of Mr. Lefkowitz himself would be necessary to challenge his claims to have no connection to New Mexico. Which brings us to his affidavit once again.

Mr. Lefkowitz's affidavit disputes his personal appearance in New Mexico, as alleged in Paragraph 33 of the Third Amended Complaint. This paragraph alleges Mr. Lefkowitz personally oversaw Corizon, CHS TX and YesCare activities in New Mexico. This part of the assertion remains undisputed. However, Plaintiff also alleged he travelled to New Mexico to engage in these business activities. In investigating this claim further, Plaintiff has discovered Mr. Lefkowitz appeared via Zoom for a settlement conference hosted by former Judge Lynch, in 2025. *See Affidavit of Maria Touchet*, attached hereto as Exhibit 1. During this Zoom meeting, Mr. Lefkowitz acted as the "Principal of Defendant." *Id*. He was described by his bankruptcy lawyer as being the individual with authority to "push a button" to approve a settlement payment. *Id*. This presents the interesting question of whether you can insulate yourself from personal jurisdiction in New Mexico by conducting all of your *button pushing* business activities via zoom.[2] This question was once

[2] In the instant case, Plaintiff was perplexed as to why the Defendants fought so hard to overcome Judge Fouratt's policy of conducting settlement conferences in person. Defendants' Request to Permit Hybrid Attendance at Settlement Conference, ECF 183, Defendants' Reply to Request to Permit Hybrid Attendance, ECF 186, Pre-Settlement Conference Hearing Minutes, ECF 189. This became a barrier to settlement in January of this year as the Defendants' representative who had authority to settle the case refused to come to an in-person hearing.

answered by the New Mexico Court of Appeals when it found a Californian attorney who engaged in a telephonic mediation in New Mexico, had availed himself of the forum despite not being licensed to practice in the state. *Martinez v. Ye,* No. A-1-CA-38031, 2021 WL 2652998 at *6 (N.M. Ct. App. June 28, 2021) (unpublished).

It should also be noted that the Lefkowitz affidavit asserts he has "never been to New Mexico in any capacity". ECF 268-1 ¶ 8. This sworn testimony is then contradicted by his lawyer when he asserted in his motion: "*As to Lefkowitz, other than some sporadic visits to New Mexico in his capacity as a representative of a corporate party*…." ECF 268 at 17. Obviously, both of these statements cannot be true at the same time, making it impossible to rely on the affidavit.

If the Court finds Mr. Lefkowitz's personal contacts with New Mexico via Zoom or via his "sporadic visits" do not constitute sufficient contact with the state, there is still a path to personal jurisdiction by imputing the activities of Corizon/CHS TX d.b.a. YesCare to him through an alter ego theory. It is undisputed that Corizon, and CHS TX d.b.a. YesCare, had sufficient contacts in New Mexico to establish jurisdiction. These corporations purported to provide medical care to New Mexico citizens. The Tenth Circuit has expressly recognized the situation where an individual who dominates a corporation and who lacks forum contacts of his own, can be subject to personal jurisdiction through the contacts of his alter ego corporation. *Home-Stake Production Co. v. Talon Petroleum, C.A*. 907 F.2d 1012 (10th Cir. 1990). Although a difficult read, the *Home-Stake* case stands for the proposition that a corporation's contacts with New Mexico (e.g. Corizon/CHS TX's contacts) when that corporation is merely an instrumentality of its owner (e.g. Mr. Lefkowitz with his investment corporation Perigrove 1018), can be attributed to the corporate owner (e.g. Mr. Lefkowitz) without running afoul of due process. In contrast, according to *Home Stake,* the reverse

is not true. If the owner dominates the corporation, the contacts of the owner are not properly attributed to the corporation. This of course is not our situation.

New Mexico also does not require all of the elements of alter ego be proven in order to "hale a foreign corporate parent into court". *Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131 ¶ 25. In assessing jurisdiction, it is only necessary to satisfy constitutional due process principles by showing minimum contacts. *Id*. The Court should look at the facts of each case and determine jurisdiction on a "case-by-case basis." *Id.* ¶26.

The next question is whether Plaintiff has alleged sufficient facts to establish a prima facia case supporting enough of the veil piercing allegations.

**Piercing the Corporate Veil**

The Amended Complaint states a viable claim against Mr. Lefkowitz and Perigrove 1018 under a well-established legal theory. New Mexico decisions have held that piercing the corporate veil is an equitable remedy. *Scott v. AZL Resources, Inc.,* 1988-NMSC-028. Three requirements must be satisfied to obtain this relief: a showing of instrumentality or domination, improper purpose and proximate causation. *Harlow v. Fibron Corp*., 100 N.M. 379, 382, (Ct. App), *cert denied*, 100 N.M. 439 (1983). New Mexico refers to the "instrumentality" or "domination" requirement as the alter ego theory. *Id*. The heart of a corporate veil case is that a corporation has been used for such an improper purpose that equity will permit its corporate form to be disregarded. When analyzing the first factor, instrumentality or dominion, New Mexico has provided a list of ten (10) factors to consider. Whether:

> (1) The parent corporation owns all or majority of the capital stock of the subsidiary.
> (2) The parent and subsidiary corporations have common directors or officers.

> (3) The parent corporation finances the subsidiary.
> (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
> (5) The subsidiary has grossly inadequate capital.
> (6) The parent corporation pays the salaries or expenses or losses of the subsidiary.
> (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.
> (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division.
> (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.
> (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.
> *Cruttenden v. Mantura,* 1982-NMSC-021, ¶ 8, 97 N.M. 432, 434–35, 640 P.2d 932, 934–35.

Plaintiff has asserted enough facts at this stage in the proceedings to show Mr. Lefkowitz and Perigrove 1018 used Corizon as a mere instrumentality for their own personal benefit. For the purposes of presenting a prima facia case to establish personal jurisdiction, Plaintiff will point to the allegations in the complaint and add certain easily obtained exhibits that demonstrate the allegations are not merely conclusory. Plaintiff wants to make sure the Court is aware these exhibits are not meant to turn a 12(b)(6) motion into a motion for summary judgment. Plaintiff reserves the right to conduct discovery on the alter ego claims as described above.

Mr. Lefkowitz used his investment firm Perigrove 1018 to purchase Corizon. *Id.* ¶ 35; *see also* ECF 268-1 ¶¶ 3, 4. He then began to siphon funds from the corporation by using a Signature Bank account he created in combination with Perigrove 1018. ECF 246 ¶¶ 37, 40, 41. As a result Perigrove 1018 and Mr. Lefkowitz co-mingled assets including bank accounts. *Id.* ¶ 39; *see also Appellants' Statement of Issues on Appeal and Designation of Items to Be Included in the Record on Appeal* at 16, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. May 7, 2024). Even Corizon's CFO and senior management did not have access to these accounts. ECF 246 ¶ 41.

In co-mingling these funds, Mr. Lefkowitz and Perigrove 1018 failed to maintain appropriate business records and used corporate funds for personal purposes. *Id.* ¶ 39. While this was occurring, Mr. Lefkowitz caused Corizon to enter contracts with companies he owned to perform work that did not exist or was billed at exorbitant rates. *Id.* ¶ 38. *See also e.g*., Complaint, *Seven Trade LLC v. Medical Engineering LLC*, No. 7:22-cv-01673 (S.D.N.Y. Feb. 28, 2022), ECF 1. This allowed Lefkowitz and his investment firm, Perigrove 1018, to enrich themselves to the disadvantage of Corizon.

This was all part of a scheme to avoid tort liability owed to prisoners across the country, including in New Mexico. The scheme was called "Project Orange." ECF 246 ¶ 45; *see also* Second Amended Disclosure Statement Regarding Debtor and Official Committee of Unsecured Creditors' Second Amended Joint Chapter 11 Plan at 79, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Oct. 27, 2023), ECF 1071. Mr. Lefkowitz and Perigrove 1018's exhibits (2 through 7) attached to the instant motion, are more evidence of Project Orange and the dominion and control of Lefkowitz. For example, the corporate entities owned by Lefkowitz all have the same Chief Legal Officer, Scott King, signing all the merger documents for all the different corporate entities. The only exception to this is Isaac Lefkowitz, whose signature appears in Exhibit 7 of the filing. *Id.* Importantly, these exhibits do not contradict the allegations contained in Plaintiff's Amended Complaint, they actually support them.

Not only did Lefkowitz drain money from Corizon's bank accounts, he also formed a new corporation, YesCare, to take over any profitable government contracts that Corizon would ordinarily be the recipient of. ECF 246 ¶¶ 46, 47, 48; *see also* Adversary Defendants Kohchise Jackson's and William Kelly's Witness and Exhibit List for May 17, 2023 Hearing, *Tehum Care*

*Services, Inc. v. Those Parties Listed in Appendix A*, Adv. Pro. No. 23-03049 (Bankr. S.D. Tex. May 15, 2023), ECF 39, PDF pp. 35–39.

This obviously had the effect of making Corizon insolvent. During the divisional merger in Texas, he created another company, CHS TX which was then acquired by YesCare for $100. ECF 246 ¶ 48; *see also CHS TX Purchase Agreement*, attached hereto as Exhibit 2. Corizon then changed its name to Tehum with a certificate of incorporation signed by Lefkowitz and declared bankruptcy. ECF 246 ¶ 49; *see Also Tehum Care Services,* Adversary Complaint, Exhibit V, ECF 2653-22; see also ECF 268-7. During the bankruptcy, Lefkowitz needed to show that Corizon/Tehum had enough assets to pay a portion of the creditors' claims, in a process known as a "Fairness Opinion." ECF 246 ¶ 50; *see also* Debtor's Emergency Motion to Extend and Enforce the Automatic Stay at 24, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Feb. 17, 2023), ECF 7. In order to hide the undercapitalization of Corizon/Tehum (a natural consequence of his draining of funds and sending contracts to CHS TX/YesCare) he submitted forged bank statements to the bankruptcy court. ECF 246 ¶¶ 51, 52.

CHS TX d.b.a YesCare then continued business in New Mexico as before. *Id.* ¶ 53; *see also* Plaintiff's Motion to Substitute CHS TX. Inc, ECF 118-4; *see also*, ECF 118-9; *see also* Exhibit 16 to Plaintiff's Motion for Substitution at 1, *Jackson v. Corizon Health, Inc.*, No. 2:19-cv-13382 (E.D. Mich.), ECF 77-16); *see also Excerpt from the Deposition of Heather* Barela, attached hereto as Exhibit 3. The new businesses occupied the same principal address as Corizon (205 Powell Place, Suite 104, Brentwood, Tennessee 37027). ECF 246 ¶ 54; *see also* ECF 118-11. The same management followed the divisional merger. ECF 246 ¶¶ 55, 56; *see also* Declaration of Jennifer Finger at 7, Ex. A to Corizon's Response, *Crawford v. Corizon Health, Inc.*, No. 1:17-cv-

00113-BR (W.D. Pa.), ECF 152-1; *see also* ECF 217; *see also* Plan of Merger, Ex. 4 to Defs. CHS TX, Inc. & YesCare Corp.'s Resp. to Pl.'s Mot. for Substitution at 4, *Jackson v. Corizon Health, Inc.*, No. 2:19-cv-13382-GAD-PTM, ECF 83-4 (E.D. Mich. Sept. 12, 2022). The same personnel and employees who worked for Corizon continued to work for CHS TX d.b.a. YesCare. ECF 246 ¶ 57; *see also* Exhibit 3; *see also* ECF 118-9. The New Mexico nurses at the Dona Ana County Detention Center were told to continue business as usual and did not notice any changes in procedures or policies after Corizon changed its name. ECF 246 ¶ 57; *see also* Exhibit 3. YesCare continued to use the same bank accounts as Corizon. ECF 246 ¶ 58; *see also Florida YesCare Emails* attached hereto as Exhibit 4. During this time period, Mr. Lefkowitz served as the sole director of Corizon, later Tehum, and oversaw all aspects of its operations and finances. ECF 246 ¶¶ 1, 61; *see also* Voluntary Petition for Non-Individuals Filing for Bankruptcy at 3, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Feb. 13, 2023), ECF 1; *see also* Exhibit. 1, *Tehum Care Services, Inc. v. Those Parties Listed in Appendix A to the Complaint*, Adv. Pro. No. 23-03049 (Bankr. S.D. Tex. May 15, 2023), ECF 39-1. Mr. Lefkowitz is also the current and sole director of YesCare, CHS TX and at least seventeen (17) more CHS related LLCs. Voluntary Petition for Non-Individuals Filing for Bankruptcy at 78–79, *In re CHS TX, Inc.*, No. 2:26-bk-01090-FMR (Bankr. M.D. Fla. May 8, 2026), ECF 1.

This is not intended to be an exhaustive list of the facts surrounding Mr. Lefkowitz and Perigrove 1018's use of the corporate form for fraudulent purposes. For the jurisdictional analysis Plaintiff's burden is "light" and only a prima facia case needs to be presented. Clearly there is enough evidence supporting the instrumentality and dominion described in *Scott.* The draining of

assets and the fraudulent bank statements used in the Texas bankruptcy are enough to demonstrate the "improper purpose." This takes us to the final factor in the analysis: proximate cause.

In 2016, New Mexico ruled on a matter not dissimilar to the instant situation. In analyzing the proximate cause prong of the veil piercing factors, the Court of Appeals held that "a direct causal link to the tort-related acts is not required." *Morrissey v. Krystopowicz*, 2016-NMCA-011, ¶ 21, 365 P.3d 20, 25. It opined, "[i]t is inequitable to allow shareholders to set up a flimsy organization just to escape personal liability." *Id.* Continuing further, "[t]he inability to recover for her injuries is itself a harm caused by [defendant's] misuse and abuse of the corporate form." *Id* at ¶ 24. The fact that Hector Garcia died before Defendants Issac Lefkowitz and Perigrove 1018 purchased Corizon holds no bearing on the new injury that arose when they purposefully drained assets from the corporation that had an obligation to pay for its medical malpractice. Similarly, shifting contracts to a newly formed corporation (owned and operated by the same shareholders) had the same effect. The proximate cause found in the *Morrissey* case is the same as alleged by Plaintiff in the Third Amended Complaint.

**<u>Defendants' Standing Argument Has No Legs</u>**

The Motion to Dismiss has argued that the bankruptcy trust has exclusive standing to bring veil piercing allegations against Lefkowitz and Perigrove 1018. This argument ignores the terms of the bankruptcy plan that Mr. Lefkowitz and Perigrove 1018 were a part of. In this plan they negotiated to pay $50 million to the beneficiaries of the bankruptcy trusts, but they also agreed that certain claimants could opt out of the bankruptcy and proceed with claims against successor entities in the "civil justice system" independently from the bankruptcy court. Plaintiff is one such claimant that elected to opt out of the bankruptcy settlement. In the definition section

of the bankruptcy plan, someone who opts out "irrevocably elects to pursue his or her PI/WD claim in the Civil Justice System with no right to return or recover from the PI/WD Trusts." Order Confirming the First Modified Joint Chapter 11 ¶ 130, at 73, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Mar. 3, 2025), ECF 2014. In other words, Plaintiff is not a beneficiary of the trust that has brought veil piercing claims in the Texas bankruptcy Court. This is confirmed in the bankruptcy plan where an injunction is created against YesCare Corp., CHS TX, Inc., or "any other alleged successor entity" from asserting "in any litigation" that the bankruptcy plan stops claims in the civil justice system from proceeding as a result of the bankruptcy. *Id.* ¶ 98 at 43. If the logic of Mr. Lefkowitz's standing argument prevailed, then the opt out provisions of the bankruptcy plan were trap doors through which litigants with legitimate claims would fall. This would jeopardize the litigation in other parts of the country where opt-out plaintiffs are pursuing their claims. For example, in Arizona, an opt out plaintiff just received permission to lift the stay from the Florida bankruptcy court. *Agreed Order Granting Motion for Relief from Stay*, *In re CHS FL, LLC*, No. 2:26-bk-01087-FMR (Bankr. M.D. Fla. Aug. 17, 2026), ECF 475. Another case, this one in Maryland, has also received permission to lift the stay. *Agreed Order Granting Motion for Relief from Stay*, *In re CHS FL, LLC*, No. 2:26-bk-01087-FMR (Bankr. M.D. Fla. Aug. 20, 2026), ECF 490.

Even if Plaintiff had not opted out of the bankruptcy settlement, the bankruptcy plan allows individuals to return to the civil justice system in the event of a default. *Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* at 91 ¶ 2, *In re Tehum Care Services, Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex. Mar. 3, 2025), ECF No. 2014 (in which the plan states: "*all Plan*

*injunctions, stays, or releases provided in favor of the Released Parties that are in effect under the Plan shall be deemed terminated and void").* This was the stick used by the trustees to encourage Mr. Lefkowitz and his corporate entities to actually fund the bankruptcy trusts rather than simply make a promise to do so. In other words, Mr. Lefkowitz made an agreement to allow standing in other forums should he default.

**Is Veil Piercing a Cause of Action or a Remedy?**

The Motion to Dismiss argues that Count V must fail because veil piercing is not an independent cause of action. ECF 268 at 22. This, however, is a distinction with no practical meaning. It is true that the New Mexico Supreme Court has held that piercing the corporate veil is an equitable remedy. *Scott*, 1998-NMSC-028. It is also true that the New Mexico Court of appeals has treated it as a cause of action when the defendants tried to dismiss it. See *Garcia v. Coffman*, 1997-NMCA-092 (where the defense made the reverse argument and tried to dismiss the veil piercing allegations because they were not described as a separate cause of action.) In other words, in New Mexico it makes no difference if the veil piercing allegations are labeled a cause of action or described as a remedy. There is no practical difference.

**Defendants go Beyond the Four Corners of the Complaint and Incorrectly Claim Plaintiff has only Pled Conclusory Statements.**

The central purpose behind a Rule 12(b)(6) motion is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of

the pleadings that a recovery is very remote and unlikely but that is not the test," *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The instant motion begins with a jurisdictional argument under Rule 12(b)(2) that requires Plaintiff to demonstrate a prima facia case, then ends with an attempt to dismiss the veil piercing allegations under 12(b)(6). Although it is appropriate to provide an affidavit challenging jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Mr. Lefkowitz goes further and attempts to introduce facts beyond the four corners of the Amended Complaint in his attempt to use 12(b)(6). Plaintiff explicitly objects to these facts and requests the Court exclude them from consideration. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381 (10th Cir. 1997). For example, on page 24 of the motion to dismiss, the corporate structures Valitas Intermediate Holdings, Inc., Valitas Health services and Corizon Health of New Jeresy, are used in an effort to defeat the veil piercing allegations.[3] If Mr. Lefkowitz wishes to file a motion for summary judgment after Plaintiff has had an opportunity to conduct discovery, then evidence of some of his other corporate entities can be explored. At this stage in the litigation, Plaintiff, and the Court, cannot possibly know the ownership structures of these entities or their relationship with "Project Orange". In so far as the Motion to dismiss uses new factual allegations to make its argument, Plaintiff requests the court disregard them, or order discovery on the issue.

At the heart of this motion to dismiss is the concept that Plaintiff has only pled conclusory statements insufficient to state a claim. In doing so, the motion ignores the numerous factual statements that lead to the inevitable conclusions the facts support. For example, the motion takes

[3] Interestingly, Valitas Intermediate Holdings, a company run by Lefkowitz, is the entity that sold CHS TX to YesCare for a mere $100. *See* Exhibit 2.

issue with the allegation that "Mr. Lefkowitz failed to keep corporate formalities". This statement deliberately ignored the fact Plaintiff asserted that Lefkowitz and Perigrove 1018 set up a Signature Bank account that the senior management and CFO of Corizon did not have access to and then drained Corizon's assets through that account. This then led Mr. Lefkowitz to forge bank statements to allow the bankruptcy to pass a Fairness Opinion during the Texas-Two-Step. Obviously, these factual allegations demonstrate Lefkowitz failed to keep corporate formalities. The motion also claims Corizon was not undercapitalized and points to the fact that it had $24.5 million in cash and had profitable prison healthcare contracts. This argument bizarrely ignores how the Third Amended Complaint explained how the corporation's bank accounts had been drained and how the prison healthcare contracts had been pushed to the newly formed corporation CHS TX, which was doing business in New Mexico as YesCare. This conduct inevitably damaged Plaintiff who had a legitimate expectation that Corizon was actually properly capitalized and hadn't had its bank accounts raided. Thankfully the *Morrissey* case makes it clear this type of corporate nonsense is not tolerated in New Mexico.

**CONCLUSION**

Plaintiff has met his burden to show a prima facia case exists to support the personal jurisdiction of Mr. Lefkowitz and his investment corporation Perigrove 1018. The Defendants' standing argument also has no legs as Lefkowitz and Perigrove 1018 agreed that plaintiffs could opt out of the bankruptcy and pursue claims in the civil justice system. The facts in the Third Amended Complaint, when taken in the light most favorable to Plaintiff, easily support the elements required to pierce the corporate veil in New Mexico, regardless of whether it is described

as a claim or a remedy. If any doubt does exist as to the existence of sufficient facts to support an alter ego determination, the Court should allow discovery on the issue.

WHEREFORE, Plaintiff Requests the Court deny Mr. Lefkowitz and Perigrove 1018's Motion to Dismiss (ECF 268).

Respectfully Submitted,

COYTE LAW P.C.
*/s/ Matthew E. Coyte*
Matthew E. Coyte
3800 Osuna Rd, NE 87109
(505) 244-3030
mcoyte@me.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of August 2026, I filed the foregoing electronically through the CM/ECF system, which caused the counsel of record to be served by electronic means.

*/s/ Matthew E. Coyte*
Matthew E. Coyte